UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MINUTECLINIC, L.L.C., | ) | |
| a Delaware limited liability company, | ) | |
| | ) | |
| Plaintiff | ) | |
| vs. | ) | |
| | ) | |
| MINUTEPHARMACY LLC, | ) | Case No. 1:15-cv-11131 |
| an Illinois limited liability company, and | ) | |
| OPEYEMI OYELAHAN and MORENIKE | ) | |
| OPE-OYELAHAN, individuals, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, UNFAIR COMPETITION, CYBERPIRACY, AND DECEPTIVE TRADE PRACTICES

Plaintiff, MinuteClinic, L.L.C., by and through its attorneys, hereby brings this action against Defendants, MinutePharmacy LLC, Opeyemi Oyelahan, and Morenike Ope-Oyelahan (collectively "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1.     This is a civil action by Plaintiff, MinuteClinic, L.L.C. (also referred to as "Plaintiff"), seeking, *inter alia*, compensatory damages, disgorgement of profits, punitive damages, domain name transfer, and permanent injunctive relief, as well as correction of the trademark register, as a result of Defendants' trademark infringement, trademark dilution, unfair competition, cyberpiracy, and deceptive trade practices arising from, *inter alia*, the Defendants' unauthorized use of Plaintiff's trademarks in connection with retail health and pharmacy services.

4837-2259-2300

## THE PARTIES

2.      MinuteClinic, L.L.C. is a limited liability company organized under the laws of the State of Delaware, having an address at One CVS Drive, Woonsocket, Rhode Island 02895. MinuteClinic, L.L.C., together with its subsidiaries and affiliated entities (hereinafter referred to collectively as "MinuteClinic"), is in the business of retail health services, including walk-in medical clinics primarily located in retail pharmacy store locations. MinuteClinic is operated as part of the retail pharmacy segment of CVS Health Corporation.

3.      Upon information and belief, Defendant MinutePharmacy LLC (hereinafter "MinutePharmacy") is a limited liability company organized under the laws of the State of Illinois having principal places of business at 21000 South Frankfort Square Road, Suite M, Frankfort, Illinois 60423, and at 22048 Emily Lane, Frankfort, Illinois 60423. MinutePharmacy is in the business of retail health and pharmacy services.

4.      Upon information and belief, Defendant Opeyemi Oyelahan, who also goes by the name or alias "Michael Oyelahan," resides at 22048 Emily Lane, Frankfort, Illinois 60423. Upon information and belief, Defendant Opeyemi Oyelahan is a registered pharmacist and a controlling principal of MinutePharmacy, exercises extensive control over MinutePharmacy, and is an active participant, primary actor, or conscious, active, and dominant force behind the wrongful acts of MinutePharmacy complained of herein for the gain of MinutePharmacy and for his individual gain.

5.      Upon information and belief, defendant Morenike Ope-Oyelahan resides at 22048 Emily Lane, Frankfort, Illinois 60423. Upon information and belief, Defendant Morenike Ope-Oyelahan is a registered pharmacist and a controlling principal of MinutePharmacy, exercises extensive control over MinutePharmacy, and is an active participant, primary actor, or conscious,

active, and dominant force behind the wrongful acts of MinutePharmacy complained of herein for the gain of MinutePharmacy and for her individual gain.

## JURISDICTION AND VENUE

6. This Court has jurisdiction by virtue of the following facts: (1) this is a civil action for trademark infringement, trademark dilution, cyberpiracy, and unfair competition under the United States Trademark Act, 15 U.S.C. § 1051 *et seq.* ("Lanham Act"), jurisdiction being expressly conferred in accordance with 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a); and (2) this is a civil action in which Plaintiff and Defendants are citizens of different states and the value of the matter in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs, jurisdiction being expressly conferred in accordance with 28 U.S.C. § 1332(a). This Court also has pendent jurisdiction over all related state law claims for trademark dilution, unfair competition, and deceptive trade practices in accordance with 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form a part of the same case or controversy.

7. This Court has personal jurisdiction over each of the parties including the Defendants, and venue in this judicial district is proper under 28 U.S.C. § 1391(b), in that a substantial part of the events that give rise to this action have occurred and continue to occur in this judicial district. Additionally, upon information and belief, each of the Defendants resides in and are doing business in Illinois and within this judicial district.

## FACTUAL ALLEGATIONS

### MinuteClinic's Retail Health Services And Its Association With CVS

8. Since at least as early as 2003, long prior to the Defendants' complained of acts, MinuteClinic (and its predecessors) has provided retail health services, including walk-in medical clinics primarily located in retail pharmacy store locations, for providing treatment of

minor illnesses and injuries, skin conditions, routine screenings, vaccinations, wellness check-ups, and physicals under the mark MINUTECLINIC.

9. In 2005, MinuteClinic launched its relationship with CVS Corporation (now CVS Health Corporation) and opened its first walk-in medical clinics based in CVS/pharmacy stores in Minneapolis-St. Paul and Baltimore. This led to national expansion of MINUTECLINIC walk-in medical clinics based in CVS/pharmacy locations, with additional clinics opening in Nashville, Indianapolis, Raleigh-Durham, and elsewhere in Maryland.

10. In 2006, CVS Corporation acquired MinuteClinic, which became part of the retail pharmacy segment of CVS Corporation and led to further national expansion of MINUTECLINIC health clinics in CVS/pharmacy locations. This also led to significant advertising and promotion of MINUTECLINIC clinics through media used to advertise and promote CVS/pharmacy services.

11. In 2007, CVS Corporation changed its name to CVS Caremark Corporation ("CVS Caremark"). The name change did not change MinuteClinic's status as a part of the retail pharmacy segment of the company.

12. In 2014, CVS Caremark changed its name to CVS Health Corporation ("CVS Health"). The name change did not affect MinuteClinic's status as a part of the retail pharmacy segment of the company.

13. In addition to the MINUTECLINIC walk-in medical clinics, CVS Health and its subsidiaries operate or manage over 8,000 retail pharmacy stores, a pharmacy benefit manager, mail order and specialty pharmacies, and an on-line pharmacy, CVS.com.

14. CVS Health, through its retail pharmacy segment, is a national market leader in retail pharmacy services. CVS Health includes some of the nation's largest retail pharmacy

chains, including CVS/pharmacy, CVS, and Longs Drugs. It fills or manages more than 1.5 billion prescriptions annually, and dispenses its prescription drugs by approximately 24,000 pharmacists across its enterprise. Approximately 70 million customers are active members of CVS's ExtraCare card loyalty program, making it one of the largest and most successful retail loyalty card programs in the country. Approximately 5 million customers use CVS Health's retail pharmacies each day in the United States.

15. In 2006, MinuteClinic became the first retail clinic provider to earn accreditation from The Joint Commission. The Joint Commission is the national evaluation and certifying agency for more than 20,000 health care organizations and programs in the United States. MinuteClinic is also the first retail health care provider to receive three consecutive accreditations from The Joint Commission (in 2006, 2009, and 2012, respectively).

16. In recent years, MinuteClinic has continued to expand its business operations. On October 22, 2015, CVS Health announced that MinuteClinic opened its 1,000th MINUTECLINIC location nationwide. MinuteClinic currently operates walk-in medical clinics in thirty-three (33) states and the District of Columbia.

17. MinuteClinic operates at least forty-four (44) MINUTECLINIC walk-in medical clinics in the State of Illinois, forty-three (43) of which are located in the Chicago metropolitan area consisting of the counties of Cook, Lake, Kane, McHenry, DuPage, and Will. At least five (5) MINUTECLINIC walk-in medical clinics are located within twenty (20) miles of Defendant MinutePharmacy's Frankfort Store (defined below), which is located in Will County.

18. MinuteClinic has plans for growth. As of December 31, 2014, MinuteClinic remained on track to reach 1,500 locations by the end of 2017.

19.     Since opening its first walk-in medical clinic, MinuteClinic nationally has provided care through more than 26 million patient visits.

20.     MinuteClinic's nurse practitioners and physician assistants specialize in family health care and can diagnose, treat, and write prescriptions for common family illnesses such as strep throat and ear, eye, sinus, bladder, and bronchial infections.  Minor wounds, abrasions, skin conditions and joint sprains are treated, and common vaccinations such as influenza, tetanus, pneumonia and Hepatitis A & B are available at most locations.  Walk-in camp, sports, and college physicals are available daily.  In addition, MinuteClinic administers a series of wellness services designed to help patients identify lifestyle changes needed to improve their current and future health, including screenings and monitoring for diabetes, high blood pressure, and high cholesterol.

21.     At the conclusion of each visit, patients can receive educational material, a prescription (when clinically appropriate), and a visit summary.  A copy of the visit summary can be sent electronically, by fax, or by mail to the patient's primary care provider with patient permission.

22.     MinuteClinic enjoys a very high level of satisfaction and quality as recognized by its consumers.  According to CVS Health research published in the October 2014 edition of *The American Journal of Managed Care*,  MinuteClinic's quality performance matched or exceeded that of other ambulatory care settings for three common health conditions.

### The MINUTECLINIC Trademark Used in Connection with MinuteClinic's Retail Health Services

23.     Long prior to the Defendants' complained of acts, MinuteClinic has used the mark MINUTECLINIC in connection with the advertising, promotion, and provision of retail health services, including walk-in medical clinic services.

24.     MinuteClinic, L.L.C. has obtained several federal registrations for its MINUTECLINIC mark from the United States Patent and Trademark Office, including the following:

| Mark | Reg. No. | Services | Class |
|------|----------|----------|-------|
| MINUTECLINIC | 2,966,381 | Drop-in medical clinic featuring non-emergency medical diagnostic services in convenient locations. | 44 |
|  | 3,451,371 | Drop-in medical clinics featuring non-emergency medical diagnostic services in convenient locations. | 44 |
|  | 3,695,950 | Drop-in medical clinics featuring non-emergency medical diagnostic services in convenient locations. | 44 |
|  | 4,771,219 | Drop-in medical clinic featuring non-emergency medical diagnostic services in convenient locations. | 44 |
|  | 4,806,401 | Drop-in medical clinic featuring non-emergency medical diagnostic services in convenient locations. | 44 |
| MINUTECLINIC 360 | 4,732,366 | Training, development and educational services, namely, providing seminars, workshops and presentations for employees in the field of operation, clinical and administrative training for medical clinics. | 41 |

25.     The aforesaid registrations are valid, subsisting, and owned by Plaintiff, MinuteClinic, L.L.C., and Registration Nos. 2,966,381, 3,451,371, and 3,695,950 are incontestable in accordance with 15 U.S.C. §§ 1065 and 1115(b), and, therefore, are conclusive evidence of the validity of those registered marks and of their registration, of Plaintiff's ownership of those registered marks, and of Plaintiff's exclusive right to use those registered marks on or in connection with the identified goods and services.

26.     MinuteClinic, L.L.C. has applied to register additional variants of its MINUTECLINIC mark with the United States Patent and Trademark Office, including the following:

| Mark | Serial No. | Services | Class |
|------|-----------|----------|-------|
| TELEHEALTH AT MINUTECLINIC | 86/123,750 | Providing medical care through various channels, including, high definition video and audio. | 44 |
| MINUTECLINIC SAVINGS STRATEGY | 86/312,156 | Administration of a program for enabling participants to obtain discounts on services. | 35 |
| MINUTECLINIC CONNECT | 86/599,763 | Providing medical care through various channels, including high definition video and audio. | 44 |

27.     CVS Health (and its subsidiaries and predecessors thereof) has been providing its retail pharmacy services in the United States under the marks CVS and CVS/PHARMACY since at least as early as 1964 and 1983, respectively.

28.     CVS Health, through its subsidiaries and predecessors thereof, has obtained many federal registrations from the United States Patent and Trademark Office for its CVS mark and variants thereof, including but not limited to Registration Nos. 919,941 (CVS), 1,698,636 (CVS), 1,869,196 (CVS), 1,876,306 (CVS), 1,877,363 (CVS), 1,877,410 (CVS), 1,904,056 (CVS), 1,904,058 (CVS), 1,906,987 (CVS), 1,919,185 (CVS), 1,928,435 (CVS), 1,938,151 (CVS), 1,970,814 (CVS), 2,021,465 (CVS GOLD EMBLEM), 2,038,532 (CVS GOLD EMBLEM), 2,048,916 (CVS/PHARMACY), 2,064,946 (CVS), 2,132,330 (CVS GOLD EMBLEM), 2,221,830 (CVS GOLD EMBLEM), 2,240,789 (CVS), 2,264,610 (CVS), 2,408,425 (CVS), 2,440,385 (CVS.COM), 2,573,942 (CVS/PHARMACY), 2,662,956 (CVS/PHARMACY), 2,692,745 (GOLD *CVS* EMBLEM), 2,737,737 (CVS/PHARMACY HEALTH SAVINGS PASS), 2,774,665 (CVS PHARMACY), 3,076,655 (CVS/PHARMACY 24 HOURS), 3,211,443

(CVS/PHARMACY), 3,670,499 (CVS/PHARMACY PEAS), 3,670,721 (CVS/PHARMACY PEAS), 3,671,974 (CVS GOLD EMBLEM), 3,684,023 (CVS CAREMARK), 3,684,025 (CVS CAREMARK), 3,710,538 (CAREPLUS CVS/PHARMACY), 3,776,243 (CVS CAREMARK), 3,818,966 (CVS CAREMARK), 3,841,918 (CVS/PHARMACY MOBILE RX), 3,873,848 (CVS CAREMARK), 3,983,054 (CVS CAREMARK| ALL KIDS CAN), 3,994,270 (CVS CAREMARK), 4,068,247 (CVS SELECT), 4,168,915 (MY CVS), 4,168,916 (MY CVS PHARMACY), 4.482.586 (ES.CVS.COM), 4,591,680 (CVS PHARMACY), 4,608,526 (CVS PHARMACY), 4,624,419 (MI CVS PHARMACY), 4,673,785 (CVS PHARMACY), 4,744,359 (CVS CMG), 4,764,852 (CVS GOLD EMBLEM), 4,795,925 (CVS/CAREMARK), 4,795,926 (CVS/CAREMARK), 4,795,927 (CVS/CAREMARK), 4,806,927 (CVS/PHARMACY HOSPITAL DELIVERY), 4,820,447 (CVS/PHARMACY COLLABORATIVE MERCHANDISING GATEWAY), and 4,852,031 (CVS/SPECIALTY).

29.     Since long prior to the Defendants' complained of acts, Plaintiff has owned invaluable goodwill which is symbolized by the MINUTECLINIC mark, the use of which substantially increases the value of  MINUTECLINIC walk-in medical clinics and the salability of the goods and services provided through them.

30.     Since long prior to the Defendants' complained of acts, MinuteClinic has sold nationally millions of dollars of retail health services through its walk-in medical clinics under the MINUTECLINIC mark, and has spent substantial sums to advertise and promote those services nationally under the MINUTECLINIC mark.

31.     CVS Health's retail pharmacy segment has for many years enjoyed billions of dollars of annual sales of, *inter alia*, prescription drug products and retail pharmacy services. CVS Health first reached $1 billion in annual sales in 1985, and its annual sales have trended

upward consistently since then. In 1999, CVS Corporation's retail pharmacy segment earned more than $17.6 million in net sales. In 2014, CVS Health's retail pharmacy segment earned more than $67.7 billion in net revenues.

32.    For many years, CVS Health has spent tens of millions of dollars annually to advertise and promote the retail pharmacy services provided in the United States through its retail pharmacy segment. In 2014, CVS Health incurred advertising expenses in excess of $210 million.

33.    More than 98 percent of MinuteClinic's MINUTECLINIC walk-in medical clinics are located inside CVS/pharmacy stores. As of December 31, 2014, when there were 971 retail health clinics operating under the MINUTECLINIC mark, 963 were located in CVS/pharmacy stores. This relationship underscores the ability by consumers of retail health goods and services to "one-stop shop" at select CVS/pharmacy locations, which creates a recognition and goodwill among consumers that adds value to the MINUTECLINIC mark, the CVS family of marks, and the services provided thereunder.

34.    It is common for the MINUTECLINIC mark to be displayed adjacent to the CVS/PHARMACY mark on CVS/pharmacy store front fascia, such that the general public will visually notice the association between the two, as depicted in the example below:



35.     By virtue of MinuteClinic's extensive use and since long prior to the Defendants' complained of acts, the MINUTECLINIC mark has become well known among consumers, has become associated by consumers with MinuteClinic and with MinuteClinic's commercial relationship with CVS/pharmacy retail pharmacy stores, and has acquired a strong secondary meaning signifying MinuteClinic.

36.     By virtue of the widespread operation of MINUTECLINIC walk-in medical clinics based in CVS/pharmacy retail pharmacy store locations, upon information and belief, the general consuming public—including consumers of retail health services, walk-in medical clinic services, and retail pharmacy services—have come to recognize that MINUTECLINIC walk-in medical clinics and retail health services have an established commercial relationship with CVS and CVS/pharmacy retail pharmacy services.

37.     By virtue of the duration, extent, and geographic reach of the advertising and publicity of the CVS mark and family of marks, and the amount, volume, and geographic extent of the retail pharmacy services offered and provided by CVS Health and its subsidiaries and predecessors thereof, and since long prior to the Defendants' complained of acts, the CVS mark and family of marks have become recognized by and considered famous among the general consuming public of the United States.

38.     By virtue of the duration, extent, and geographic reach of MinuteClinic's advertising and publicity of the MINUTECLINIC mark, and the amount, volume, and geographic extent of the retail health services offered and provided by MinuteClinic under the MINUTECLINIC mark, and by virtue of the MinuteClinic's association with CVS Health as recognized by the public and the widespread operation of MINUTECLINIC walk-in medical clinics based in CVS/pharmacy retail pharmacy store locations and the marketing and

promotional activities supporting each, and since long prior to the Defendants' complained of acts, the MINUTECLINIC mark has become recognized by and considered famous among the general consuming public of the United States.

**Defendant Opeyemi Oyelahan Is A Former CVS Employee**

39.     From approximately November 5, 2008 until approximately October 25, 2015, Defendant Opeyemi Oyelahan was employed by CVS Caremark (or CVS Health) as a pharmacist.

40.     On or about November 5, 2008, Defendant Opeyemi Oyelahan applied for a job with CVS Caremark as a pharmacist.

41.     Beginning in approximately November 2008, CVS Caremark employed Defendant Opeyemi Oyelahan as a pharmacist intern.  Mr. Oyelahan worked primarily at the CVS/pharmacy retail pharmacy located at 3034 West Lincoln Avenue, Peoria, Illinois 61604.

42.     In connection with his employment at CVS Caremark, Defendant Opeyemi Oyelahan agreed to be bound by, *inter alia*, CVS Caremark's Code of Conduct and the company's guidelines as set forth in the CVS Caremark Employee Handbook.  On or about November 5, 2008 and November 21, 2008, Defendant Opeyemi Oyelahan executed signed acknowledgments that he received, read, and understood the information provided to him in: (i)  CVS Caremark's Confidentiality Policy Statement and Acknowledgment; and (ii) CVS Caremark's Code of Conduct.  Further, on or about June 23, 2009, Defendant Opeyemi Oyelahan executed a signed acknowledgment that he received a copy of the Employment Handbook of CVS Caremark.

43.     In approximately May 2010, Defendant Opeyemi Oyelahan was promoted to full-time staff pharmacist, after which time Mr. Oyelahan worked primarily at the CVS/pharmacy retail pharmacy located at 250 West 144th Street, Riverdale, Illinois 60827.

-12-

44.     In connection with his continued employment at CVS Caremark, Defendant Opeyemi Oyelahan agreed a second time to be bound by, *inter alia*, CVS Caremark's Code of Conduct and the company's guidelines as set forth in the CVS Caremark Employee Handbook. On or about June 20, 2012, Defendant Opeyemi Oyelahan applied to change job positions at CVS Caremark and, in connection that application, he executed signed acknowledgments that he received, read, and understood the information provided to him in: (i) CVS Caremark's Confidentiality Policy Statement and Acknowledgment; and (ii) CVS Caremark's Code of Conduct. Further, on or about June 27, 2012, Defendant Opeyemi Oyelahan executed a signed acknowledgment that he received a copy of the Employment Handbook of CVS Caremark.

45.     During his employment with CVS Caremark and CVS Health (collectively, "CVS"), Mr. Oyelahan had knowledge of MinuteClinic's MINUTECLINIC mark, as well as a familiarity with CVS's business operations and marketing and promotional activities as they related to retail health services, including retail pharmacy services and those provided by MinuteClinic.

46.     The CVS Code of Conduct had numerous provisions which specifically bring to its employees' attention the need to respect CVS's property rights, maintain the confidentiality of CVS's proprietary and confidential information, and to abide by the law, including:

> "Confidential and Proprietary Information: Confidential and proprietary information such as trade secrets (which may include certain Company policies and/or procedures), technological advances, customer lists, knowledge of acquisitions or divestitures and financial data are some of the Company's most valuable business assets. This includes information that might be of use to competitors or harmful to the Company or those we serve if disclosed to others. To determine whether or not information is proprietary, consider whether information that is handled or shared in the job might give our competitors an advantage if disclosed to them."

"You should: Use proprietary information only for job-related purposes, never for personal gain or to the detriment of CVS Health . . . . [and] Return all proprietary information in your possession upon leaving CVS Health . . . ."

"Asset Protection: The Company's physical assets include items such as inventory, office and store equipment, vehicles, supplies, reports and records, telephones, computers and any other tangible property that CVS Health owns, rents or leases. Assets may also be non-physical, for example, the Company name, logo, trade secrets, strategies and customer information. Protecting CVS Health assets against loss, theft or other misuse is the responsibility of every colleague because it directly impacts our profitability and our reputation."

"[CVS Health's Corporate Integrity Agreement] reinforces our strong commitment to compliance with the law and the highest ethical standards of our employees."

"As a colleague, you have certain responsibilities related to compliance and integrity. All colleagues must: . . . Understand and follow the Code of Conduct and Company policies . . . [and] Conduct your work and professional activities ethically and in accordance with all applicable laws and regulations . . . ."

47. The CVS Code of Conduct also warned employees against conflicts of interest, which included "outside employment," "[h]aving a financial interest in a CVS Health competitor, vendor or client," and the "[u]se of company assets for certain purposes."

48. CVS's Employee Handbook likewise had numerous provisions which specifically bring to its employees' attention the need to respect CVS's property rights, maintain the confidentiality of CVS's proprietary and confidential information, and to abide by the law, including:

"Confidentiality: As an employee of CVS Caremark, you may be exposed from time to time to private or confidential information related to our customers, employees, competitive strategies, business systems and other information. It is vitally important that you understand that all proprietary information you may gain access to at the workplace is the property of CVS Caremark and/or of the individual customer or employee."

"CVS Caremark e-mail systems shall not be used for the unauthorized external transmission of confidential or proprietary information, protected health information (PHI), copyrighted or similar materials."

"Use of Company Property: CVS Caremark provides you with the tools and materials you need to do your job. The systems and supplies you use every day – computer, telephone and mail systems, office supplies and furniture, printed materials and information, etc. – should always be used in the conduct of CVS Caremark business, responsibly and with respect, consistent with CVS Caremark guidelines."

"Examples of conduct that generally lead to discipline and termination include but are not limited to: . . . Illegal or unethical conduct, whether on or off the job . . . Willful or careless destruction of or damage to the company's or another person's property . . . Unauthorized use of company property or equipment."

49.  In addition, CVS's Employee Handbook also warned employees against conflicts of interest, which included working outside the organization and use of the company's "assets in connection with working for someone other than CVS Caremark."

50.  The Employee Handbook also specifically mentioned the MinuteClinic business and further shows at least Defendant Opeyemi Oyelahan's familiarity with that business and knowledge of the MINUTECLINIC mark.  As an example, on page 55, there is a reference to the "MinuteClinic Resource Guide."

51.  Defendant Opeyemi Oyelahan permanently left the employ of CVS Health on or about October 25, 2015.

**Defendants' Complained Of Conduct**

52.  Upon information and belief, defendants Opeyemi Oyelahan and Morenike Ope-Oyelahan together created or caused to be created defendant MinutePharmacy.  MinutePharmacy was formed on or about June 19, 2014 as a limited liability company under the laws of the State of Illinois.

-15-

53.     Upon information and belief, Defendants, either individually or collectively, have opened and now operate a retail pharmacy store under the name MINUTE PHARMACY located at 21000 South Frankfort Square Road, Suite M, Frankfort, Illinois 60423 (the "Frankfort Store").

54.     Upon information and belief, Defendants, either individually or collectively, own and operate a website having the domain *www.minutepharmacy.com* (the "MinutePharmacy Website"), the home page of which is depicted below and which describes the retail pharmacy services offered by Defendants at the MINUTE PHARMACY Frankfort Store:



55.     Upon information and belief, Defendants, either individually or collectively, also use the mark MINUTEPHARMACY to refer to Defendants' retail health and pharmacy services on the MinutePharmacy Website.

56.     Upon information and belief, Defendant Opeyemi Oyelahan, also known as Michael Oyelahan, is the registered owner of the *www.minutepharmacy.com* domain name.

57.     Defendants, either individually or collectively, operate the MINUTE PHARMACY Frankfort Store in order to directly compete with CVS Health and its retail pharmacy business.

58.     Upon information and belief, Defendant Opeyemi Oyelahan left CVS Health with the intent to set up a competing retail pharmacy business using an intentionally similar and confusing name in an effort to trade off of the value and goodwill established by Plaintiff's MINUTECLINIC mark.

### Proceedings Before the Trademark Trial and Appeal Board

59.     On or about May 13, 2014, defendant MinutePharmacy filed an application with the United States Patent and Trademark Office to register the mark MINUTEPHARMACY (Serial No. 86/279,911) in Class 35 for "retail pharmacy services."

60.     On or about February 4, 2015, Plaintiff timely filed a Notice of Opposition against MinutePharmacy's aforementioned pending trademark application.  The opposition proceeding is currently pending before the Trademark Trial and Appeal Board ("TTAB") as Opposition Proceeding No. 91220500.  Contemporaneous with the filing of this Complaint, Plaintiff seeks to have the opposition proceedings stayed for full resolution of the matters set forth herein before this Court.

## COUNT I: FEDERAL TRADEMARK INFRINGEMENT

61.     Plaintiff realleges and incorporates Paragraphs 1 through 60 of this Complaint as if specifically set forth at length herein and made a part hereof.

62.     Long after the acquisition of secondary meaning of Plaintiff's MINUTECLINIC mark, upon information and belief, Defendants, either individually or collectively, commenced simulating Plaintiff's MINUTECLINIC mark by adopting and using MINUTE PHARMACY and MINUTEPHARMACY for retail pharmacy services in connection with the Frankfort Store and the MinutePharmacy Website, and by registering and using the domain name *www.minutepharmacy.com* for a website related to the Frankfort Store operations.

63.     Upon information and belief, Defendants knowingly, intentionally, and maliciously adopted and used MINUTE PHARMACY and MINUTEPHARMACY for retail pharmacy services with a bad faith and willful motive to trade upon the goodwill represented by MinuteClinic's retail health services, the MINUTECLINIC mark, and CVS Health's retail pharmacy services. The association between MinuteClinic and CVS Health underscores Defendants' bad faith and deliberate and willful adoption of MINUTE PHARMACY and MINUTEPHARMACY.  Defendants had full knowledge of MinuteClinic's prior use of the MINUTECLINIC mark through at a minimum Defendant Opeyemi Oyelahan's prior employment with CVS Health (and its predecessor), an entity affiliated with Plaintiff and against which Defendants now directly compete.

64.     Defendants' use of each of MINUTE PHARMACY and MINUTEPHARMACY falsely and deceptively represents that Defendants' retail pharmacy services emanate from MinuteClinic, or are connected with, sponsored, or approved by MinuteClinic, and Defendants' use is likely to cause confusion with MinuteClinic's use of its aforesaid MINUTECLINIC marks, or otherwise to cause deception or mistake as to source, sponsorship, or approval of Defendants'

retail health services. The association between MinuteClinic and CVS/pharmacy, a retail pharmacy service provider against which Defendants directly competes, increases the likelihood that consumers will be confused, deceived, or mistaken by Defendants' use of MINUTE PHARMACY and MINUTEPHARMACY.

65.     Defendants' aforesaid unauthorized use of each of MINUTE PHARMACY and MINUTEPHARMACY infringes Plaintiff's federally registered MINUTECLINIC trademarks, in violation of the Lanham Act, 15 U.S.C. § 1114.

66.     Defendants' aforesaid acts are greatly and irreparably damaging to Plaintiff and will continue to damage Plaintiff unless and until enjoined by this Court; wherefore, Plaintiff is without adequate remedy at law.

## COUNT II: FEDERAL UNFAIR COMPETITION

67.     Plaintiff realleges and incorporates Paragraphs 1 through 66 of this Complaint as if specifically set forth at length herein and made a part hereof.

68.     Defendants' aforesaid unauthorized use of each of MINUTE PHARMACY and MINUTEPHARMACY constitutes a misleading use of a word, term, symbol, trade dress, or device, or a combination thereof, in violation of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT III: FEDERAL TRADEMARK DILUTION

69.     Plaintiff realleges and incorporates Paragraphs 1 through 68 of this Complaint as if specifically set forth at length herein and made a part hereof.

70.     Since long prior to Defendants' complained of acts, the MINUTECLINIC mark had become famous within the meaning of the Lanham Act, 15 U.S.C. § 1125(c)(2).

71.     The aforesaid unauthorized use of Defendants' MINUTEPHARMACY and MINUTE PHARMACY marks dilutes the distinctiveness of Plaintiff's MINUTECLINIC mark in violation of the Lanham Act, 15 U.S.C. § 1125(c).

## COUNT IV: REFUSAL OF TRADEMARK APPLICATION

72.     Plaintiff realleges and incorporates Paragraphs 1 through 71 of this Complaint as if specifically set forth at length herein and made a part hereof.

73.     Pursuant to 15 U.S.C. §1119, the Court has authority to determine Defendant MinutePharmacy's right to registration, order the cancelation of its registration(s), in whole or in part, and otherwise rectify the register.

74.     Defendant MinutePharmacy's Application Serial No. 86/279,911 should be ordered refused.

## COUNT V: DOMAIN NAME TRANSFER

75.     Plaintiff realleges and incorporates Paragraphs 1 through 74 of this Complaint as if specifically set forth at length herein and made a part hereof.

76.     Defendant Opeyemi Oyelahan's unauthorized registration and use of the domain name *www.minutepharmacy.com* in order to compete against his former employer in the business of retail pharmacy services constitutes a bad faith intent to profit from Plaintiff's MINUTECLINIC mark in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

## COUNT VI: ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

77.     Plaintiff realleges and incorporates Paragraphs 1 through 76 of this Complaint as if specifically set forth at length herein and made a part hereof.

78.     Defendants' aforesaid unauthorized use of each of MINUTE PHARMACY and MINUTEPHARMACY constitutes engagement in deceptive trade practices that are greatly damaging to Plaintiff, in violation of the Uniform Deceptive Trade Practices Act of the State of Illinois, 815 ILCS 510/1 *et seq.*

79.     Defendants' aforesaid deceptive trade practices occur primarily and substantially in Illinois, and such services are used by consumers in Illinois.

80.     Defendants willfully engaged in the aforesaid deceptive trade practices by knowingly, intentionally, and maliciously adopting and using MINUTE PHARMACY and MINUTEPHARMACY for retail health services with a bad faith and willful motive to trade upon the goodwill represented by Plaintiff's services and trade identities.

### COUNT VII: ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

81.     Plaintiff realleges and incorporates Paragraphs 1 through 80 of this Complaint as if specifically set forth at length herein and made a part hereof.

82.     Defendants' aforesaid unauthorized use of each of MINUTE PHARMACY and MINUTEPHARMACY constitutes engagement in unfair methods of competition and deceptive practices that are greatly damaging to Plaintiff, in violation of the Consumer Fraud and Deceptive Business Practices Act of the State of Illinois, 815 ILCS 505/1 *et seq*.

83.     Defendants' aforesaid acts of unfair competition occurred primarily and substantially in Illinois, and such products are used by consumers in Illinois.

84.     Defendants willfully engaged in the aforesaid unfair methods of competition and/or deceptive trade practices by knowingly, intentionally, and maliciously adopting and using MINUTEPHARMACY and MINUTE PHARMACY for retail health services with a bad faith and willful motive to trade upon the goodwill represented by Plaintiff's services and trade identities.

### COUNT VIII: ILLINOIS TRADEMARK DILUTION

85.     Plaintiff realleges and incorporates Paragraphs 1 through 84 of this Complaint as if specifically set forth at length herein and made a part hereof.

-21-

86. Since long prior to Defendants' complained of acts, the MINUTECLINIC mark had become famous in the State of Illinois within meaning of 765 ILCS 1036/65(a).

87. The Defendants' unauthorized use of the MINUTEPHARMACY and MINUTE PHARMACY marks causes dilution of the distinctive quality of Plaintiff's MINUTECLINIC mark, in violation of the Anti-Dilution Statute of the State of Illinois, 765 ILCS 1036/65(a).

88. Upon information and belief, by using the MINUTEPHARMACY and MINUTE PHARMACY marks in the manner complained of herein, Defendants willfully intended to trade on Plaintiff's reputation or to cause dilution of the famous MINUTECLINIC mark.

## COUNT IX: ILLINOIS COMMON LAW UNFAIR COMPETITION

89. Plaintiff realleges and incorporates Paragraphs 1 through 88 of this Complaint as if specifically set forth at length herein and made a part hereof.

90. Defendants' aforesaid unauthorized use of each of MINUTE PHARMACY and MINUTEPHARMACY constitutes unfair competition under the common law of the State of Illinois. *See* 765 ILCS 1036/80.

91. Defendants willfully engaged in the aforesaid unfair methods of competition by knowingly, intentionally, and maliciously adopting and using MINUTE PHARMACY and MINUTEPHARMACY for retail health services with a bad faith and willful motive to trade upon the goodwill represented by Plaintiff's services and trade identities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, MinuteClinic, L.L.C., demands judgment against each of the Defendants, MinutePharmacy LLC, Opeyemi Oyelahan, and Morenike Ope-Oyelahan, that:

1. Defendant MinutePharmacy LLC, and its directors, officers, including Opeyemi Oyelahan and Morenike Ope-Oyelahan, and each of their respective partners, agents, servants,

employees, and attorneys, and all those in active concert or participation with any of them, be permanently enjoined from:

       A.  using the MINUTE PHARMACY mark for retail health services, including retail pharmacy services or any confusingly similar goods or services;

       B.  using the MINUTEPHARMACY mark for retail health services, including retail pharmacy services or any confusingly similar goods or services;

       C.  registering, adopting, trafficking in, or using the domain name *www.minutepharmacy.com* for retail health services, including retail pharmacy services or any confusingly similar goods or services;

       D.  using any name, mark, logo, domain name, or trade dress consisting in whole or in part of the word "minute" for retail health services, including retail pharmacy services or any confusingly similar goods or services;

       E.  using any other name, mark, logo, domain name, or trade dress which is a reproduction, counterfeit, copy, or colorable imitation or simulation of, or which is not distinctively different from, Plaintiff's MINUTECLINIC mark, for retail health services, including retail pharmacy services or any confusingly similar goods or services;

       F.  doing any other act or thing likely to dilute the distinctiveness of Plaintiff's MINUTECLINIC mark;

       G.  doing any other act or thing likely to confuse, mislead, or deceive others into believing that Defendants, or their services, emanate from MinuteClinic, CVS Caremark, or CVS Health, or are affiliated with, connected with, sponsored by, authorized by or approved by MinuteClinic, CVS Caremark, or CVS Health; and

H. aiding or assisting any person engaging in any of the acts prohibited by subsections (A) through (G) above.

2. Defendants MinutePharmacy LLC, Opeyemi Oyelahan, and Morenike Ope-Oyelahan be required, jointly and severally, to pay to Plaintiff the following:

A. in accordance with 15 U.S.C. § 1117(a), three times such damages as Plaintiff suffered as a result of Defendants' acts of trademark infringement and unfair competition, three times all profits wrongfully derived by Defendants from such acts, and Plaintiff's costs, including reasonable attorney's fees;

B. in accordance with the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1117(d), statutory damages of $100,000;

C. in accordance with 815 ILCS 510/3, Plaintiff's costs and attorney's fees, as well as any other applicable monetary relief;

D. in accordance with 815 ILCS 505/10a, Plaintiff's actual damages, Defendants' profits derived from Defendants' wrongful acts, punitive damages in a sum sufficient to deter Defendants from future such acts, and Plaintiff's reasonable attorney's fees and costs; and

E. in accordance with the common law of the State of Illinois, and 765 ILCS 1036/65 and 1036/70, three times Plaintiff's actual damages and three times Defendants' profits derived from Defendants' wrongful acts, punitive damages in a sum sufficient to deter Defendants from future such acts, and Plaintiff's reasonable attorney's fees and costs, as well as any other applicable monetary relief.

3. The Defendants be required, in accordance with 15 U.S.C. § 1118 and 765 ILCS 1036/70, to deliver up to Plaintiff for destruction all labels, signs, prints, packages, wrappers,

receptacles, and advertisements in their possession bearing MINUTE PHARMACY or MINUTEPHARMACY, or any other reproduction, counterfeit copy, or colorable imitation of Plaintiff's trade identities, and all plates, models, matrices, and other means of making same.

4.      Defendant Opeyemi Oyelahan be required, in accordance with 15 U.S.C. § 1125(d)(1)(C), to forfeit and transfer all rights in the domain name *www.minutepharmacy.com* to Plaintiff and deliver to Plaintiff all documents evidencing ownership of such domain name, or in the alternative be required to cancel the domain name.

5.      The Defendants be required, in accordance with 15 U.S.C. § 1116(a), to file with the Court, and serve upon Plaintiff, a report in writing under oath, setting forth in details the matter and form in which Defendants have complied with the terms of any injunction or other relief ordered by this Court.

6.      Plaintiff have such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable by jury.


Dated:  December 10, 2015                              Respectfully submitted,

                                                                            /s/ Jeanne M. Gills
                                                                            Frank E. Pasquesi (6205455)
                                                                            Jeanne M. Gills (6225018)
                                                                            Jason A. Berta (6295888)
                                                                            FOLEY & LARDNER LLP
                                                                            321 North Clark Street, Suite 2800
                                                                            Chicago, Illinois 60654-5313
                                                                            312.832.4500
                                                                            312.832.4700 (Fax)

                                                                            *Attorneys for Plaintiff*
                                                                            *MinuteClinic, L.L.C.*

## CERTIFICATE OF SERVICE

I, Jeanne M. Gills, an attorney, hereby certify that on December 10, 2015, I caused to be filed electronically this COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, UNFAIR COMPETITION, CYBERPIRACY, AND DECEPTIVE TRADE PRACTICES with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois and Federal Rule of Civil Procedure 5(b)(3).

/s/ Jeanne M. Gills